# JOSEPH & KIRSCHENBAUM LLP
Attorneys at Law

**Charles Joseph**
**D. Maimon Kirschenbaum**
**Denise A. Schulman**
**Josef Nussbaum**
**Lucas C. Buzzard**

32 Broadway, Suite 601
New York, NY 10004
Phone (212) 688-5640
Fax (212) 688-2548
www.JK-LLP.com

October 26, 2018

**VIA ECF**

Honorable Joan M. Azrack
United States District Court
Eastern District of New York
Long Island Courthouse
100 Federal Plaza
Central Islip, NY 11722

    Re:  **Ruddock v. All Metro Home Care Services of New York, Inc.**
        **No. 18 CV 00024**

Dear Judge Azrack:

  We represent the Plaintiff in the above-referenced matter. The parties have reached a settlement, and their executed settlement agreement is annexed hereto as Exhibit 1. I submit this letter to respectfully request that the Court approve the settlement as fair and reasonable under *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015) and so-order the parties' stipulation of dismissal, which is attached hereto as Exhibit 2.

  Plaintiff worked for Defendants as a home health aide. Plaintiff generally worked several 24-hour shifts per week, for which it is alleged that Defendants compensated her for 12 or 13 hours. Throughout her employment by Defendants, Plaintiff alleges that she maintained her own residence.

  Plaintiff's complaint alleges that Defendants (1) failed to pay her all minimum wage, overtime, and spread of hours compensation due under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") and related regulations; (2) failed to provide her with the wage notices and wage statements required under N.Y. Lab. L. § 195; and (3) failed to pay Plaintiff the wages and benefits required under the New York Home Care Worker Wage Parity Act, N.Y. Pub. L. § 3614-c and (iv) the New York City Fair Wages For Worker's Act.

  Under *Cheeks*, a court must determine whether an FLSA settlement is fair and reasonable. Relevant factors include

  (1) the plaintiffs' range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in

1

establishing their respective claims and defenses; (3) the seriousness of the litigation risks faces by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

*Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (internal quotation marks omitted). Applying these factors, the settlement is fair and reasonable.

As set forth in the settlement agreement, the parties have agreed to settle this case for the $25,000. Before reaching the settlement, Defendants provided Plaintiff with payroll records and personnel documents that enabled Plaintiff to more fully evaluate the value of her claims. Thereafter, the parties engaged in arm's-length negotiations through experienced FLSA counsel.[1] Given the arm's length nature of the negotiations, there is no possibility of fraud or collusion.

Based on the payroll documents Defendants produced, Plaintiff estimates that her maximum unpaid wages total approximately $65,000, the majority of which are NYLL and/or New York Wage Parity Act damages.[2] The vast majority of Plaintiff's alleged unpaid wages are attributable to her claim that she is entitled to be paid for all 24 hours of her 24-hour shifts (which are potentially compensable under New York law but not under the FLSA) and that she was entitled to be paid the higher rate applicable under the New York Wage Parity Act. The only unpaid wages potential compensable under the FLSA are attributable to (1) 24-hour shifts for which she was paid for 12 hours instead of 13 hours, and (2) alleged unpaid hours that Plaintiff claims to have worked when her sleep and meal time was interrupted, for which there are no time records. As a result, Plaintiff faces substantial legal and factual risks on her sleep and meal time claims and, as discussed below, on her 24 hour shift claims. In light of the litigation risks, the $25,000 settlement – which exceeds Plaintiff's maximum FLSA 12/13 hour unpaid wage recovery – represents a reasonable compromise of Plaintiff's claims.

Most significantly, the parties dispute as a matter of law whether or not Plaintiff was entitled to be paid for all 24 hours of her 24-hour shifts. While New York state intermediate appellate courts have found that all 24 hours are compensable, *see Andreyeva v. N.Y. Health Care, Inc.*, 61 N.Y.S.3d 280 (N.Y. App. Div. 2d Dep't 2017); *Tokhtaman v. Human Care, LLC*, 149 A.D.3d 476 (N.Y. App. Div. 1st Dep't 2017), federal courts have held to the contrary, finding that under New York law, home health aides need be paid for only 13 out of 24 hours, *see Bon-Wittingham v. Project O.H.R. (Office for Homecare Referral), Inc.*, No. 16 CV 541, 2017 U.S. Dist. LEXIS 75286, at *7-9 (E.D.N.Y. May 17, 2017); *De Carrasco v. Life Care Services, Inc.*, No. 17 CV 5617, 2017 U.S. Dist. LEXIS 206682 (S.D.N.Y. Dec. 15, 2017). This question is presently before the New York Court of Appeals. If this Court and/or the New York Court of Appeals declines to follow the holdings of the New York intermediate appellate courts, Plaintiff's potential recovery would be drastically reduced, as she would be entitled to be paid for

---

[1] The undersigned, lead counsel for Plaintiff, has practiced employment law, including litigating FLSA actions, for over nine years. Defendants' counsel Jonathan P. Arfa is similarly an experienced employment litigator. *See* http://arfalaw.com/who_we_are.htm.

[2] If Plaintiff prevailed on all claims, she could also recover liquidated damages and up to $10,000 for violations of N.Y. Lab. L. § 195(1) & (3).

2

13 hours per 24-hour shift, plus any additional time during which she actually performed work. The vast majority of Plaintiff's damages are attributable to recovery for the full 24-hour shifts.

If Plaintiff is not automatically entitled to be paid for all 24 hours of her 24-hour shifts, she faces significant challenges in establishing additional compensable time beyond the base 13 compensable hours. Plaintiff contends that her sleep time was often interrupted due to her clients' need for assistance. However, in order for such interruptions to be compensable, Plaintiff would have to show that Defendants had actual or constructive knowledge of this additional work. *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 361 (2d Cir. 2011). As Defendants have no records of Plaintiff alerting them of such interruptions, it would likely be difficult for Plaintiff to establish Defendants' actual or constructive knowledge of additional work time.

There are additional factual disputes relating to Plaintiff's New York Wage Parity Act claim. It is alleged that Defendants paid Plaintiff less than the rate required under the New York Wage Parity Act. However, the parties dispute whether the Act applied to Plaintiff for most of her employment, as Defendants contend that she was a consumer directed personal aide ("CDPA"). A CDPA is an aide who is hired and supervised directly by the client, rather than being hired by an agency and assigned to clients. CDPAs were not covered by the New York Wage Parity Act until July 1, 2017, *see* N.Y. Pub. Health L. § 3614-c, just a few months before Plaintiff's employment ended. Plaintiff contends that she was hired, placed, and supervised by Defendants, not by her clients, and thus she was not a CDPA. The success or failure of Plaintiff's New York Wage Parity Act hinges largely on the resolution of this factual dispute.

Because of the foregoing risks, the settlement amount of $25,000 is fair and reasonable and should be approved. To be sure, the settlement amount exceeds 100% of Plaintiff's maximum possible recovery – including unpaid wages, liquidated damages, and statutory penalties – on her strongest claims, which are for (1) one unpaid hour per day when she was paid for 12 hours instead of 13 hours, resulting in total unpaid wages of approximately $2,288; (2) unpaid spread of hours compensation, totaling approximately $1,240; and (3) her claims that Defendants failed to provide the wage notices and wage statements required under N.Y. Lab. L. § 195(1) & (3), for which the maximum potential damages total $10,000.

The settlement also provides for reasonable attorneys' fees and costs to Plaintiff's counsel. Under the settlement agreement, Plaintiff's counsel will receive a total of $8,600: $400 as reimbursement of costs[3] and one-third of the remainder of the settlement – or $8,200 – as attorneys' fees. The proposed fee award of one-third of the after-costs settlement amount should also be approved because it was consensual and agreed to by the Plaintiff. Under Plaintiff's contingency fee engagement agreement, Plaintiff's counsel is entitled to request out of the total recovery one-third in attorneys' fees plus recovery of costs. *See Mireku v. Red Vision Sys., Inc.*, No. 11 Civ. 9671, 2013 U.S. Dist. LEXIS 172102 (S.D.N.Y. Dec. 6, 2013) (noting the consensual nature of the fee arrangement); *see also Rangel v. 639 Grand St. Meat & Produce Corp.*, No. 13 Civ. 3234, 2013 U.S. Dist. LEXIS 134207, at *4 (E.D.N.Y. Sept. 19, 2013) ("Pursuant to plaintiff's retainer agreement with counsel, the fee is one-third of the settlement

---

[3] Plaintiff's counsel seeks reimbursement of the $400 filing fee in this case.

amount, plus costs. This fee arrangement is routinely approved by courts in this Circuit."). All Plaintiffs signed the settlement agreement, which provides for the one-third fee. Moreover, "[c]ontingency fees of one-third in FLSA cases are routinely approved in this Circuit." *Martinez v. Consulate Gen. of Algeria in N.Y.*, No. 16 Civ. 2390, 2016 U.S. Dist. LEXIS 157999, at *8-9 (S.D.N.Y. Nov. 15, 2016); *see also, e.g., Geskina v. Admore Air Conditioning Corp.*, No. 16 Civ. 3096, 2017 U.S. Dist. LEXIS 67583, at *8-9 (S.D.N.Y. May 3, 2017); *Ramirez v. Greenside Corp.*, No. 16 CV 726, 2017 U.S. Dist. LEXIS 30527, at *9-10 (S.D.N.Y. Mar. 3, 2017); *Maldonado v. Srour*, No. 13 Civ. 5856, 2016 U.S. Dist. LEXIS 139881, at *3 (E.D.N.Y. Oct. 6, 2016); *Garcia v. Atlantico Bakery Corp.*, No. 13 Civ. 1904, 2016 U.S. Dist. LEXIS 84631, at *3-4 (S.D.N.Y. June 29, 2016).

To the extent that the Court deems a "lodestar" crosscheck appropriate, we have attached as Exhibit 3 a copy of Plaintiff's counsel's contemporaneous time records. Based on those records, Plaintiff's counsel's lodestar amount equals $9,687.50.[4] Therefore, the requested one-third fee amounts to *less than* Plaintiff's counsel's lodestar. This amount is objectively reasonable, particularly in light of the consensual nature of the one-third agreement. *See, e.g., Campos v. Goode*, No. 10-cv-224 (DF), 2011 U.S. Dist. LEXIS 22959, at *21 (S.D.N.Y. Mar. 4, 2011) ("Courts regularly award lodestar multipliers from 2 to 6 times lodestar.").

For the foregoing reasons, we respectfully request that the Court approve the parties' settlement and so order the stipulation of dismissal. We thank the Court for its attention to this matter.

Respectfully submitted,

Denise A. Schulman

cc: All Counsel (via ECF)

---

[4] There are three billers identified in Plaintiffs' counsel's time records: Denise Schulman ("DAS" in time records), D. Maimon Kirschenbaum ("DMK"), and Carlora Turnquest ("CLT"). Ms. Schulman's billable rate as a partner has been approved at $400 per hour, Mr. Kirschenbaum's billable rate has been approved at $450 per hour, and JK's paralegals' billable rate has been approved at $125 per hour. *See e.g., Murphy v. Lajaunie*, No. 13 CV 6503 (S.D.N.Y. Feb. 2, 2018) (report & recommendation); *Lizondro-Garcia v. Kefi LLC*, No. 12 Civ. 1906, 2015 U.S. Dist. LEXIS 85873, at *20 (S.D.N.Y. July 1, 2015).
 D. Maimon Kirschenbaum graduated from Fordham University School of Law in 2005 and has worked as Joseph & Kirschenbaum LLP ("JK") since then. As a result of his accomplishments representing food service workers in New York City, he became a member/partner of the firm in May 2007. Mr. Kirschenbaum currently manages the firm, while also maintaining a docket comprised largely of individual and class/collective wage and hours lawsuit.
 I graduated from New York University School of Law in 2008 and joined Joseph & Kirschenbaum LLP ("JK") in 2009. I was an associate at the firm until February 8, 2017, when I became a partner. The majority of my docket involves individual and class/collective wage and hour actions.
 Carlora Turnquest was a paralegal at JK in January and February 2017. She returned to the firm in January 2018 and has been employed as a paralegal since that time. Ms. Turnquest has a B.A. from Howard University and a certificate of paralegal studies from Long Island University.